# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEJEUNE, G. Individually and on behalf of T.T. ,** <br> **Plaintiff,** <br><br> v. <br><br> **KHEPERA CHARTER SCHOOL, PEDRO RIVERA AND THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION,** <br> **Defendants.** | CIVIL ACTION <br><br><br> NO. 17-4965 |

## MEMORANDUM OPINION

Plaintiff moves for reasonable attorney's fees under the Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1415(i)(3)(B)(i)(I), in connection with her action against Defendants Khepera Charter School ("Khepera") and the Pennsylvania Department of Education (PDE). She requests $97,987.50[1] in fees and $497.09 in costs. While Defendants concede that a prevailing party is entitled to reasonable attorney's fees under the IDEA, they argue that Plaintiff is not entitled to the full amount requested.

## I.    BACKGROUND

The IDEA "requires that every child with a disability receive 'free appropriate public education'" (FAPE). *LeJeune G. v. Khepera Charter Sch.*, 2019 WL 3335138, at *1 (3d Cir., July 25, 2019) (quoting 20 U.S.C. § 1412(a)(1)(A)). "To ensure that a FAPE is provided to all disabled children, the IDEA provides that federal funding be distributed to State educational agencies (SEAs), which, in turn, allocate those funds to local educational agencies (LEAs)." *Id.* While "LEAs are charged with directly providing or arranging for third-party provision of a

---

[1] In her opening memorandum, Plaintiff requested $105,048.00 in fees, a 5% reduction from her lodestar calculation. Plaintiffs has since agreed to reduce her fee request by 23.9 hours (20 hours spent on fee petitions and 3.9 hours spent enforcing court orders). Plaintiff has also agreed to forego seeking time spent on her Replies.

FAPE," SEAs are responsible for "ensuring compliance with the IDEA and administering educational programs for disabled children." *Id.* (internal quotation omitted). When an LEA is unable to provide a FAPE—for example, due to insolvency—the SEA becomes responsible for "step[ping] into the breach." *See id.* at *3. In the litigation underlying this fee request, Plaintiff alleged that Khepera (the LEA) failed to provide her child, T.T., with a FAPE and demanded that PDE (the SEA) "step into the breach."

Plaintiff initiated legal action against Khepera in November 2014, though not, initially, in federal court. Under the IDEA, a parent who files a complaint alleging that an LEA denied her child a FAPE is entitled to an "impartial due process hearing" before a hearing officer. *See generally* 20 U.S.C. § 1415(f). In Pennsylvania, the Commonwealth's Office of Dispute Resolution conducts IDEA hearings. *See* 22 Pa. Code § 14.162. After a due process hearing on the November 2014 complaint, the hearing officer ordered Khepera to provide T.T. with compensatory education. Khepera subsequently agreed to pay $160,000 towards a trust for T.T.'s education ("the Implementation Agreement"). The Implementation Agreement also provided for reasonable attorney's fees in the event of a breach. Then, in August 2015, Plaintiff filed a second due process complaint against Khepera, and Khepera ultimately agreed to: 1) pay an additional $9,240 into the trust; 2) pay T.T.'s 2015–2016 tuition to the YALE school, a private school for students with disabilities; 3) reimburse $10,560.96 for tuition already paid to YALE; and 4) pay Plaintiff's attorney's fees ("the Resolution Agreement"). Khepera ultimately breached both agreements, failing to pay $44,445 in compensatory education payments towards the trust and the 2015-16 YALE tuition. In June 2017, Plaintiff's attorney notified PDE that Khepera had breached both the Implementation and Resolution Agreements.

Then, in November 2017, Plaintiff sued Khepera and PDE in federal court, alleging that

2

Khepera denied T.T. a FAPE and breached its agreements with Plaintiff, and characterizing Khepera as "either unwilling or unable" to fulfill its obligations. The Complaint also alleged that PDE was responsible for remedying these breaches and providing T.T. with a FAPE. Khepera did not respond to the Complaint, so Plaintiff's allegations regarding it were deemed admitted. *See* Fed. R. Civ. P. 36(a)(3).

Meanwhile, PDE was investigating Plaintiff's claims, and in a March 26, 2018 letter, it offered to pay the $44,445 in compensatory education payments owed by Khepera. Plaintiff, however, was dissatisfied with PDE's offer as it did not provide all the relief agreed to by Khepera in the Implementation Agreement. Rather than paying the $44,445 directly to the trust, PDE determined that the funds were to be administered through the Pennsylvania Training and Technical Assistance Network (PaTTAN). Unlike the trust funds, the PaTTAN funds could not be used for recreational activities, private placements and post-secondary tuition. PDE's offer also did not include attorney's fees and costs and did not address the issue of the YALE tuition.

On April 27, 2018, Plaintiff moved for summary judgment against both Khepera and PDE and PDE cross-filed for summary judgment against Plaintiff. The Court granted Plaintiff's motion for summary judgment on August 29, 2018, on the basis that Khepera 1) breached the Implementation Agreement[2] and 2) breached the Resolution Agreement, but noted that "matters do not end there because Khepera is experiencing financial difficulties and has refused to pay its obligations under Plaintiff['s] agreement[]." *Lejeune*, 327 F. Supp. 3d at 797.

With respect to PDE's motion for summary judgment, the Court granted it in part and denied it in part. With respect to PDE's responsibility for Khepera's obligations, "the IDEA

---

[2] The Court also rejected an argument that the issue of Khepera's breach was mooted by PDE's March 26 offer. Because PDE's offer did not provide "complete relief," *Lejeune v. Khepera Charter Sch.*, 327 F. Supp. 3d 785, 796 (E.D. Pa. 2018), *aff'd sub nom.*, *LeJeune*, 2019 WL 3335138 at *4, Plaintiff was entitled to continue pursuing her claim.

3

does not require an SEA to step in and fulfill IDEA resolution agreements when an LEA is merely 'unwilling' to comply;" however, an LEA *is* required "to step into the breach" where a Plaintiff has demonstrated that an SEA is "unable" to do so. *Id.* at 800. Because Plaintiff had indeed proven that Khepera was unable to fulfill its obligations, PDE was responsible for providing T.T. with a FAPE, and, to that end, for paying the remaining $44,445 in compensatory education funds. *Id.* However, because PDE and Khepera's obligations were not determined to be coextensive—PDE was responsible for providing T.T. with a FAPE, no more and no less— PDE was not required to "step into the breach" to the extent that Khepera's obligations exceeded the IDEA's requirements. Specifically, while PDE was bound by its March 26 offer, it was not bound by Khepera's agreement to deposit the compensatory education funds into the trust, because administering the funds through PaTTAN did not amount to a FAPE denial. PDE was also not bound by the Resolution Agreement because T.T. was not denied a FAPE by Khepera's nonpayment of the YALE tuition.

Plaintiff moved for attorney's fees following summary judgment, but both parties asked for a stay while Plaintiff appealed the Court's partial grant of summary judgment in PDE's favor. The decision was affirmed in all respects. *LeJeune*, 2019 WL 3335138 at *4. Now that the appeal has concluded, Plaintiff once again moves for reasonable attorney's fees under the IDEA. Her fee petition requests compensation for services provided by three members of Berney & Sang: founding partner David Berney, associate Kevin Golembiewski and former associate Morgen Black-Smith.[3]

## II. DISCUSSION

"Under the IDEA, a court, in its discretion, may award reasonable attorneys' fees as part

---

[3] Ms. Black-Smith has since left Berney & Sang.

of the costs . . . to a prevailing party who is the parent of a child with a disability." *Ida D. v. Rivera*, 2019 WL 2615481, at *6 (E.D. Pa. June 26, 2019) (quoting 2 U.S.C. § 1415(i)(3)(B)(i)(I); *see also M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017). The burden of proving that a particular request is reasonable rests on the requesting party. *See Rode v. Dellarciprete*, 892 F.2d 1117, 1183 (3d Cir. 1990).

i.  ***Prevailing Party***

Khepera denies that Plaintiff prevailed in the underlying litigation.[4] "Generally, parties are considered prevailing parties if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. A party need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award." *Ida D*, 2019 WL 2615481, at *6 (internal quotations and citations omitted). "[T]o 'prevail' under the IDEA, as under other statutes[5] with 'prevailing party' fee provisions, a party must obtain a "material alteration of the legal relationship of the parties" that is "judicially sanctioned."'" *M.R.*, 868 F.3d at 224 (quoting *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 292 (3d Cir. 2016)).

Khepera argues the August 2018 judgment did not materially alter Plaintiff's legal relationship with Khepera and characterizes Plaintiff's success on summary judgment as "purely technical and de minimis." Because "Plaintiff already had contractual and statutory rights to enforce her agreement," Khepera reasons, and because "Khepera admitted at the outset to having breached the agreement," the August 2018 judgment changed nothing.

Khepera's attempt to dismiss Plaintiff's summary judgment victory is self-defeating. As Khepera admits, Plaintiff had the right to "enforce" her agreements (*i.e.*, the Implementation and

---

[4] PDE does not dispute that Plaintiff is the prevailing party.

[5] The Third Circuit interprets the term "prevailing party" in the IDEA as coextensive with the same phrase in 42 U.S.C. § 1988. *M.R.*, 868 F.3d at 225.

Resolution Agreements) with Khepera. But, these agreements were not self-enforcing. So, Plaintiff sued to obtain a judgment to enforce them. While "a plaintiff does not become a 'prevailing party' solely because his lawsuit causes a voluntary change in the defendant's conduct," obtaining an enforceable order does confer such status, even where the parties reached an ostensible agreement prior to the order's issuance.[6] *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (explaining that "a settlement agreement enforced through a consent decree can serve as the basis for an award of attorneys' fees") (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)). While Plaintiff's Agreements with Khepera provided the possibility of judicial enforcement, the August 2018 judgment actually enforced them. This constituted a material alteration in their relationship. Plaintiff therefore prevailed against Khepera.

### ii. *Reasonableness*

Defendants characterize Plaintiff's requested fee as unreasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rode*, 892 F.2d at 1183 (internal quotations omitted). "Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar," which "is presumed to be the reasonable fee." *Id.* Though "the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable with the submission of evidence supporting both the hours and rate claims," "[i]n a statutory fee case, the party opposing the fee award then has

---

[6] Tellingly, in the *Ida D.* litigation, Khepera "initially argue[d] that the litigation did not materially alter the relationship between Plaintiffs and Khepera" but subsequently "acknowledge[d] that courts may permit recovery of attorney fees incurred for certain enforcement efforts, and that the Berney Firm is entitled to fees for enforcing the underlying settlement agreements given Khepera's breach thereof." *Ida D.*, 2019 WL 2615481, at *6. The *Ida D.* litigation, another IDEA case against Khepera, also involved denied FAPEs, breached agreements and attorney-fee disputes.

6

the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Finnegan v. Smith*, 2019 WL 1052013, at *2 (M.D. Pa. Mar. 5, 2019) (internal citations omitted). Additionally, the "district court has the discretion to . . . adjust the lodestar downward [to] account[] for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id.*[7]

      a. <u>Excessive rates</u>

Plaintiff seeks an hourly rate of $495 for David Berney, $325 for Morgen Black-Smith and $270 for Kevin Golembiewski. Both Khepera and PDE characterize these rates as excessive, though they disagree about the proper rate. PDE proposes a rate of $425 for Mr. Berney, $270 for Ms. Black-Smith and $255 for Mr. Golembiewski; Khepera proposes a rate of $367.50 for Mr. Berney, $270 for Ms. Black-Smith and $240 for Mr. Golembiewski.

"The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate. The Supreme Court has directed that the district court should then consider the 'prevailing market rates' in the relevant community," *Pennsylvania Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998) (internal quotations and citations omitted), for attorneys of "comparable skill, experience, and reputation," *Rode*, 892 F.2d at 1183. "[A]ffidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community" may constitute evidence of the market rate. *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 492 (D.N.J. 1998). Additionally, "[t]he fee schedule established by Community Legal Services, Inc. (CLS) has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*

---

[7] Downward adjustments to a lodestar "should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." *Rode*, 892 F.2d at 1183.

*v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (internal quotations omitted).

As of the time of the fee petition's submission, Mr. Berney had practiced law for 27 years, Ms. Black-Smith for 13 years[8] and Mr. Golembiewski for 6 years. Mr. Berney "has successfully litigated hundreds of education law cases and regularly teaches and published on special education law," and Ms. Black-Smith and Mr. Golembiewski have also published on special education law and successfully litigated education cases. *Ida D.*, 2019 WL 2615481, at *7. It is undisputed that the rates requested in the fee petition are Mr. Berney, Ms. Black-Smith and Mr. Golembiewski's usual billing rates for fee paying clients. All three attorneys have also provided declarations detailing their education, credentials and experience; these declarations, as well as declarations from Philadelphia civil rights attorneys attesting to Mr. Berney, Ms. Black-Smith and Mr. Golembiewski's experience and skill and to the reasonableness of their rates, are included in Plaintiff's request. Tellingly, the rates charged by all three attorneys are also *below* those outlined in the CLS schedule for attorneys with comparable experience—a fact that neither Defendant disputes.[9]

Nevertheless, Defendants challenge not only the rates themselves but also their increase over time. First, Defendants argue that counsels' rates are unreasonable because Mr. Berney, Ms. Black-Smith and Mr. Golembiewski billed lower rates at the onset of this litigation—and, in Mr. Golembiewski's case, requested a lower rate in the first fee petition—than they do now. Defendants contend the rate should reflect the cost of counsel's time on the date services were rendered, rather than current billing rates. However, the *current* market rate, rather than the date

---

[8] Though Ms. Black-Smith graduated law school in 2006 and entered practice in 2008, she only began practicing special education law in 2015.

[9] In his declaration, Mr. Berney explains that he raised the firm's rates in 2014 after determining that Berney & Sang's rates were "substantially under market." However, the firm's current rates remain below the CLS schedule.

of service, is the relevant indicator for purposes of calculating a reasonable rate, and "[t]he current market rate is the rate *at the time of the fee petition*, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259 F.3d 146, 149–50 (3d Cir. 2001) (emphasis added). In *Lanni*, the Third Circuit rejected a district court's attempt to apply the very standard Defendants advocate here, describing the district court's decision to "calculate[] fees on a graduated scale roughly tracking the actual historical rates of [counsel]" as "inexplicabl[e]." *Id.*; *but see Steward v. Sears, Roebuck & Co.*, 2008 WL 1899995, at *3 (E.D. Pa. Apr. 29, 2008) (declining to award counsel an increased rate based solely "on the passage of time"). Second, Defendants argue that Ms. Black-Smith's rate should be reduced to reflect the $270 rate awarded in *Nicole B. v. Sch. Dist. of Philadelphia*, 2017 WL 783757 (E.D. Pa. Feb. 28, 2017) and *Jada H. v. Rivera*, 2019 WL 2387929, at *2 (E.D. Pa. June 6, 2019). However, *Nicole B.* concluded before this case was filed, and "[h]ourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence unless those rates were set for the same attorney and for the same type of work *over a contemporaneous time period.*" *Nicole B.*, 2017 WL 783757, at *3 (internal quotations omitted) (emphasis added). While *Jada H*. was filed after this case, the court reduced Ms. Black-Smith's rate on the basis of her "limited time practicing special education law." However, this court is not bound by the *Jada H.* decision, and like the court in *Ida D.*, considers Ms. Black-Smith's legal experience as a whole. *See Ida D. v. Rivera*, 2019 WL 2615481, at *8.

Plaintiff has submitted enough evidence to prove the reasonableness of the requested rates, and Defendants' arguments concerning the rates' change over time does not disprove their reasonableness.

9

b. Excessive hours

Plaintiff has provided detailed time-sheets in support of her request. While Defendants do not dispute the accuracy of the time-sheets, they do argue that the number of hours requested are unreasonable. Generally, "[h]ours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (internal citation omitted).

*i. Fee Petition Preparation*

Both Khepera and PDE argue that Plaintiff's counsel expended excessive time on fee petitions. In her opening brief, Plaintiff requests 17.9 hours for time spent by Mr. Berney and 52.7 hours for time spent by Mr. Golembiewski on fee petitions.[10] Then, in her Reply, Plaintiff voluntarily deducts 20 hours from Mr. Golembiewski's time, "in the interest of compromise."[11] Including Plaintiff's voluntary reductions, Plaintiff thus requests $17,689.50 in connection with fee petition preparation.[12]

"[T]ime spent on fee petition preparation is compensable." *Frazier v. Se. Pennsylvania Transp. Auth.*, 1993 WL 38401, at *1 (E.D. Pa. Feb. 11, 1993); *see also Maria C. ex rel. Camacho v. Sch. Dist. of Philadelphia*, 142 F. App'x 78, 83 (3d Cir. 2005) (affirming district court's fee award, including fees in connection with fee petition litigation); *Rode*, 892 F.2d at 1192 (rejecting district court's determination that 101.6 hours spent on fee petition was excessive). And, like time spent on any other aspect of litigation, time spent on a fee petition must be reasonable to be recoverable. *Id.*; *see also Pub. Interest Research Grp. of New Jersey,*

---

[10] These figures include both the time spent on the fee petition at issue here, and the fee petition filed prior to the stay.

[11] Plaintiff mistakenly states counsel's updated hours on fee petitions as 49.6 hours. However, 17.9 + (52.7 − 20) = 50.6, not 49.6.

[12] The Third Circuit has suggested that a district court should calculate a separate lodestar for time related to fee petition preparation (17.9 x $495) + (32.7 x $270) = $17,689.50. *See Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985).

10

*Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) (explaining that a district court should consider whether these services require the same quality of expertise and skill as the underlying dispute). Though Khepera dismisses fee petition preparation as "cut and paste" work, Plaintiff's petition required researching complex issues of law, such as joint and several liability in the IDEA context, and analyzing other recent IDEA fee awards, such as that in *Ida D*. "The novelty and complexity" of issues are properly reflected "in the number of billable hours recorded by counsel." *See Blum v. Stenson*, 465 U.S. 886, 898 (1984). Considering the nature of the issues raised and Plaintiff's voluntary 28% reduction in fee petition preparation hours,[13] the time requested for fee petition preparation is not excessive.

>  ii. *Litigation Strategy*

Both Khepera and PDE also argue that certain aspects of Plaintiff's litigation strategy unnecessarily lengthened the underlying litigation, causing counsel to accumulate excessive hours.[14] First, both challenge the 11.1 hours—4.7 hours from Mr. Berney and 6.4 hours from Mr. Golembiewski—spent attempting to subpoena certain bank records from Khepera and responding to Khepera's Motion to Quash those subpoenas. The subpoenas "request[ed] a broad range of documents" which the court ultimately denied as "burdensome and overly broad." Though Plaintiff claimed bank records were relevant to demonstrating Khepera's insolvency (and hence its inability to fulfil its obligations to Plaintiff, and the necessity of PDE's involvement), the particular documents requested were unnecessary. Khepera had already

---

[13] Plaintiff initially requested 70.6 hours for fee petition preparation. Plaintiff then deducted 20 hours, for a total of 50.6 hours. This represents as 28% reduction in hours, since 50.6 represents 72% of 70.6 (17.9 + (52.7 - 20) = 50.6 - 70.6 = .72). Only .4 of these hours were billed to Khepera; the rest were billed to PDE.

[14] PDE also characterizes counsel's pre-Complaint time (11 hours) as excessive and proposes a 50% reduction to those hours but does not explain why this time is excessive or provide any cases to support its argument. Plaintiff's award will not be reduced on this basis. *See Beattie v. Colvin*, 240 F. Supp. 3d 294, 297 (D.N.J. 2017) (rejecting "non-specific challenge" to hours requested for pre-Complaint work in an Equal Access to Justice Act case).

admitted its liability and its inability to pay, and Plaintiff had already successfully discovered other financial records, prior to her unsuccessful discovery attempt on the banks. Because the requested discovery was unnecessary, and because the request lengthened the litigation, 11.1 hours shall be deducted from Plaintiff's request. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000) (upholding district court's decision to deduct hours for unnecessary discovery).[15]

Second, Khepera challenges Plaintiff's decision not to move for a judgment on the pleadings after Khepera failed to respond to its Complaint. Since statements in a Complaint are deemed admitted when a defendant fails to respond, *see* Fed. R. Civ. P. 36(a)(3), Khepera argues Plaintiff should have ended the litigation then and there rather than moving for summary judgment and accumulating more attorney hours. However, the statements in the Complaint did not conclusively established Khepera's *inability* to fulfill its obligations, an important element of Plaintiff's case; rather, Khepera was described as either "unwilling *or* unable to comply with its IDEA obligations." (emphasis added). As the court noted in *Lejeune*, "in order to succeed on its claims against PDE, Plaintiffs [had to] demonstrate that Khepera [was] unable to satisfy its IDEA obligations under the various agreements related to these cases." 327 F. Supp. 3d at 800. Plaintiff was not required to abandon an essential component of her case simply because Khepera refused to answer her Complaint, and, thus, her fee request will not be reduced on this basis.

Third, Khepera argues that it was unreasonable for Plaintiff to continue litigating after

---

[15] Additionally, the Court advised Plaintiff's counsel during a conference call on March 30, 2018 that Plaintiff would not recover attorney's fees in connection with these discovery requests. *See Levy v. Comm'r*, 87 T.C. 794, 800 (1986) (citing petitioner's failure to heed the court's warnings during the course of a conference call as a factor in its denial of petitioner's motion to set aside a dismissal); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *7 (S.D.N.Y. Dec. 18, 2009) (citing plaintiff's failure to heed the court's warnings during the course of a conference call as a factor in its decision to grant summary judgment in favor of defendants).

PDE's offer to pay the $44,450 in compensatory education funds owed by Khepera to the trust. However, this same argument was rejected at summary judgment. *Lejeune*, 327 F. Supp. 3d at 795 (finding that Plaintiff's claims against Khepera were not mooted by PDE's offer, because PDE's offer promised incomplete relief); *see also Ida D.*, 2019 WL 2615481, at *11 (E.D. Pa. June 26, 2019) (declining to reduce Plaintiffs' fee award where Plaintiffs rejected an unsatisfactory settlement offer). Plaintiff will not be penalized for pursuing complete relief.

### iii. Prior Payments

Khepera objects to Plaintiff's request on the basis that counsel has already been sufficiently compensated by Khepera. First, Khepera notes that it already "paid a total of $47,884.33 to the Berney Firm" in connection with Plaintiff's due process complaints. Khepera does not explain the relevance of these payments to this litigation or offer any support for its implication that payments made to counsel in an administrative proceeding distinct from this litigation should offset the fees currently at issue. Plaintiff's award will not be reduced on this basis.

Second, Khepera states that "counsel improperly obtained payment of additional fees . . . from student's compensatory education fund" and argues this amount should also offset the current request. Counsel denies any improper conduct. Regardless, this very argument was addressed and rejected in the underlying litigation. *Lejeune*, 327 F. Supp. 3d at 797 n.7 (explaining that, if counsel had improperly withdrawn funds from the trust, "Khepera's claim for an offset would be against Plaintiff's attorney, but its debt is to the Plaintiffs. Thus, there is no right to an offset."). Khepera's argument fares no better here than it did at summary judgment.

Finally, Khepera argues that Plaintiff's counsel has already been compensated by the fees awarded in the *Ida D.* litigation. "When comparing time sheets submitted in support of that

13

petition to the Fee Petition at issue now," Khepera suggests that the same work has been billed twice. *Ida D.* did involve issues very similar to those at issue in Plaintiff's underlying litigation; however, Khepera does not identify any of counsel's supposedly duplicative entries.[16] Rather, Khepera simply asserts that "[a]ll discovery, research, and briefing in the two cases were identical." This sweeping statement is unhelpful to the court's analysis, *see Marino v. Usher*, 2014 WL 12606151, at *4 (E.D. Pa. Nov. 3, 2014) (rejecting party's attempt to characterize hours billed as excessive "on a macro level" without identifying specific entries and overruling "such an amorphous general objection" (internal quotations omitted)) (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 715 (3d Cir. 1989)), and is also inaccurate. While Plaintiff's counsel did, for example, reuse portions of the *Ida D.* summary judgment briefing in this litigation, the billing entries reflect that counsel saved time (and, by extension, that Plaintiff saved money) by not starting the briefing in this case from scratch;[17] such efficiency counts for, not against, Plaintiff. *See Medina v. Donaldson*, 2015 WL 77430, at *14 (E.D.N.Y. Jan. 6, 2015) ("The Court approves of the efficient reuse of past briefing, but such practices should result in time saved…"); *see also Stahl v. Taft*, 2006 WL 314496, at *3 (S.D. Ohio Feb. 8, 2006). Plaintiff's award will not be reduced on the basis of Khepera's contention that counsel has already been compensated by the *Ida D.* fee award.

    c. <u>Partial Success</u>

While PDE does not dispute Plaintiff's prevailing party status, PDE does characterize

---

[16] Furthermore, in his declaration, Mr. Berney stated in his declaration that he "reviewed all of the timesheets that are being submitted . . . and . . . voluntarily deducted . . . duplicative, redundant, or otherwise excessive" entries.

[17] For example, Mr. Golembiewski, the attorney primarily responsible for briefing the summary judgment motions, recorded only 1.1 hours in connection with the motion against Khepera during the current litigation (beginning April 22, 2018 and ending with filing on April 27, 2018). By contrast, as Khepera's own exhibits shows, Mr. Golembiewski recorded more time preparing the summary judgment motion against Khepera in *Ida. B* in a single day (April 24, 2018) than he did during the entirety of the current litigation.

Plaintiff's success as "limited" and calls for a 25% downward departure on Plaintiff's lodestar.

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And, "[t]his will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* "[W]here the successful and unsuccessful claims involve a common core of facts, the lawsuit cannot be viewed as a series of discrete claims and the district court should instead focus on the significance of the overall relief obtained." *I.W. v. Sch. Dist. of Philadelphia*, 2016 WL 147148, at *20 (E.D. Pa. Jan. 13, 2016) (internal quotations and alterations omitted). Indeed, a downward departure may be warranted even where a Plaintiff has "obtained significant relief" "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

This is such a case. Plaintiff's claims against Khepera and PDE were interrelated in that they involved a common set of facts and sought the same relief (fulfillment of the Agreements) under the same statute (the IDEA) for related harms (breach of the Agreements and denial of a FAPE). And, Plaintiff did secure an important victory in holding PDE responsible for providing T.T. with a compensatory education. But, she also failed in significant respects. Plaintiff was denied her preferred method of compensation from PDE—*i.e.*, administering the compensatory education funds through PaTTAN rather than the trust—and was denied YALE tuition payments for 2015-16. In sum, she failed in holding PDE liable for all of Khepera's obligations.

*Ida D.* is instructive. Though Plaintiff cites *Ida D.* for the proposition that its lodestar should *not* be reduced, the plaintiff in *Ida D.* obtained greater relief than Plaintiff. As a result of *Ida D.*, PDE was required to fulfill Khepera's obligations up to and including Khepera's

15

agreement to pay the plaintiff's child's tuition to another school—relief denied to Plaintiff. *See Ida D.*, 2018 WL 6046456, at *13. *I.W.* is also instructive. Plaintiffs in *I.W.* sued for attorney's fees under the IDEA following the conclusion of a due process hearing against their child's school district. *I.W.*, 2016 WL 147148, at *20. Though plaintiffs achieved "significant success" as a result of the hearing—including securing 1300 hours in compensatory education from the school district—they also failed to obtain relief related to matters such as "extracurricular activities" and "compliance with [a] . . . consent decree," and their lodestar was consequently reduced by 30%. *Id.* at 20.

Considering the scope and significance of Plaintiff's success—she not only succeeded in obtaining specific relief from PDE, but also succeeded in establishing PDE's general duty to "step into the breach" created by an operational but insolvent charter schools—a 30% reduction is unwarranted. Nevertheless, because Plaintiff also failed in a significant respect—she did not succeed in establishing Khepera and PDE's obligations as coextensive—the lodestar will be reduced by 10% as against PDE, exclusive of the hours spent on fee petition preparation. Because Plaintiff succeeded entirely in her claims against Khepera, there will be no reduction as against Khepera.

### iii. *Joint and Several Liability*

Plaintiff argues that Defendants should be held jointly and severally liable for her attorney's fees, *i.e.*, that both Khepera and PDE should be liable for the entire fee award.[18] Khepera denies that joint and several liability applies, arguing that it should not be held liable for

---

[18] Plaintiff also argues that PDE should be directed to satisfy Khepera's award if the Court issues separate fee awards. As support, Plaintiff cites a single case describing the SEA as the "central point of accountability" under the IDEA. It does not follow that PDE is responsible for all of Khepera's obligations, including its attorney fee payments.

16

attorney time spent of claims primarily intended to establish PDE's liability.[19]

In a suit involving multiple defendants, "[t]he allocation of fee liability is a matter committed to the district court's discretion." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990) (explaining that a court may consider factors such as "the relative culpability of the parties" and "the proportion of time spent litigating against each defendant" in determining a fee award). Joint and several liability is a theory of recovery which may, but does not necessarily, apply in a multi-defendant suit; "joint and several liability . . . requires that the plaintiffs . . . establish that each defendant acted in concert to 'produce a single, indivisible injury.'" *Niblack v. Murray*, 2016 WL 4086775, at *4 (D.N.J. July 29, 2016) (quoting *Harper v. Albert*, 400 F.3d 1052, 1061–62 (7th Cir. 2005)).

That is not the case here.[20] While Khepera and PDE were both found liable in the underlying action, they were not found liable for the same injuries. *See Lejeune*, 327 F. Supp. 3d at 802. Khepera was found liable for breaching its Agreements with Plaintiff, but PDE was only found liable to the extent that those breaches denied T.T. a FAPE. *Id.* As a result, the parties were not ordered to provide the same relief: while Khepera was held to the terms of the Resolution Agreement, PDE was not (*i.e.*, PDE was not required to pay the YALE tuition in Khepera's stead); *id.*; and, while Khepera was held to the terms of the Implementation Agreement, PDE was allowed to fulfill its obligations under the Agreement in a manner inconsistent with its terms (*i.e.*, by administering the claimed funds through PaTTAN rather than through the trust), *id.* at 25.

Because Defendants did not produce "a single indivisible injury," joint and several

---

[19] PDE does not address the issue of joint and several liability in its briefing.

[20] The Court assumes without deciding that joint and several liability may apply in the IDEA attorney's fees context.

liability does not apply. The fee award will therefore be calculated on the basis of the disaggregated lodestar[21] provided by Plaintiff: $16,962.50 as against Khepera and $93,614.50 as against PDE.[22]

## III. CONCLUSION

Plaintiff shall be awarded $86,933.97 in attorney's fees. Khepera shall be ordered to pay attorney's fees in the amount of $14,412.83,[23] and PDE shall be ordered to pay attorney's fees in the amount of $72,521.14.[24]

September 24, 2019　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　/s/Wendy Beetlestone, J.
　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**WENDY BEETLESTONE, J.**

---

[21] Defendants do not contest the accuracy of this division.

[22] These figures do not include Plaintiff's voluntary 5% lodestar reduction.

[23] Plaintiff initially requested $16,962.50 for hours billed against Khepera. The following reductions then apply for a total of $14,412.83.
- $848.13: Plaintiff's voluntary 5% lodestar reduction ($16,962.5 - 5%)
- $41.04: Plaintiff's voluntary 20-hour reduction from Mr. Golembiewski's time on fee petition preparation, proportionate to the hours billed (.4 hrs, or .76% of Mr. Golembiewski's 52.7 hours on fee petition preparation) to Khepera for fee petition preparation (20 - .76% x 270)
- $324: Plaintiff's voluntary 1.2-hour reduction of Mr. Golembiewski's time spent enforcing the court's judgment against Khepera (1.2 x 270)
- $1,336.5: Plaintiff's voluntary 2.7-hour reduction of Mr. Berney's time spent enforcing the court's judgment against Khepera

[24] Plaintiff initially requested $93,614 for hours billed against PDE. The following reductions then apply for a total of $72,521.14.
- $4,680.20: Plaintiff's 5% voluntary downward departure to total lodestar ($93,614 - 5%)
- $7,225.65: 10% downward departure for partial success, exclusive of PDE's portion of the fee lodestar (($17,689.5 x 99.24%) - 10%)
- $5,132.01: Plaintiff's voluntary 20-hour reduction from Mr. Golembiewski's time on fee petition preparation, proportionate to the hours billed (52.3 hrs, or 99.24% of Mr. Golembiewski's 52.7 hours on fee petition preparation) to Khepera for fee petition preparation (20 - 99.24% x 270)
- $2,326.50: Mr. Berney's hours on bank subpoenas (4.7 x 495)
- $1,728: Mr. Golembiewski's hours on bank subpoenas (6.4 x 270)